## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Charles Stiffler aka Charlie Stiffler, individually and on behalf of all others similarly situated, | Docket No. 3:18-cv-1337 (JUDGE ROBERT D. MARIANI) |
| Plaintiff, v. | Complaint – Class action |
| | FILED ELECTRONICALLY |
| Frontline Asset Strategies, LLC, Defendant. | |

## FIRST AMENDED COMPLAINT

### I. Introduction

1.     This is an action for damages brought by an individual consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("the Act") which prohibits debt collectors from engaging in abusive, unfair, and deceptive practices.

### II. Jurisdiction and Venue

2.     Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1692k(d), which permits an action under the Act to be brought in any court of competent jurisdiction.

3.     Venue in this district is proper in that Defendant transacts business here and the conduct complained of is alleged to have occurred here.

### III. Parties

4.      Plaintiff, Charles Stiffler aka Charlie Stiffler, is a natural person residing at 127 White Birch Park, Lake Ariel, PA 18436.

5.      Defendant, Frontline Asset Strategies, LLC, ("Frontline") is a limited liability corporation with a place of business located at 2700 Snelling Avenue N., Suite 250, Roseville, MN 55113.

6.      Frontline regularly uses the mail in its business.

7.      Frontline rarely, if ever, knows whether any particular account that it attempts to collect is a "debt" as defined by the FDCPA, because Frontline does not know whether that account was a transaction "in which the money, property, insurance, or services which [was] the subject of the transaction [was] primarily for personal, family, or household purposes."

8.      Nevertheless, Frontline does have reason to believe that it is probably true that more than 50% of the accounts that it attempts to collect are "debts" as defined by the FDCPA.

9.      As of July 26, 2018, Frontline's website https://frontlineas.com/ advertised that Frontline offers "Consumer-focused, Compliance-based Services."

10.      As of July 26, 2018, Frontline's web page https://frontlineas.com/core-values/ contained the following language:

# Client-Consumer-Centric

We are champions of our clients, their customers as consumers. We know whom we work for. We exist to help others succeed. FAST has built mutually beneficial relationships because we heed rule number one: You're the boss. We're proud to be of service. Tell us what you need and watch us exceed.

11.     Therefore, Frontline does have reason to believe that it is probably true that the principal purpose of Frontline's business is the collection of "debt" as defined by 15 U.S.C. § 1692a(5).

12.     The principal purpose of Frontline's business is the collection of "debt" as that term is defined by 15 U.S.C. § 1692a(5).

13.     Additionally, even if Frontline is unsure whether any specific account that it attempts to collect for a third party is a "debt" as defined by the FDCPA, Frontline does have reason to believe that a non-trivial portion of the accounts that it attempts to collect were transactions "in which the money, property, insurance, or services which [were] the subject of the transaction [were] primarily for personal, family, or household purposes."

14.     Thus, Frontline regularly collects or attempts to collect debts asserted to be owed or due another.

15.     Frontline is a "debt collector" as defined by the Act, 15 U.S.C. § 1692a(6).

## IV. Statement of Claim

16.    Within the past year Frontline was attempting to collect an account Plaintiff allegedly owed to CACH, LLC ("the Account").

17.    The Account is a "debt" as that term is defined by the Act, 15 U.S.C. § 1692a(5).

18.    On or about August 17, 2017, Frontline caused to be mailed a letter addressed to Plaintiff.

19.    A true and correct copy of the letter is attached as Exhibit A. (Redacted to ensure financial privacy).

20.    The letter was an attempt to collect the Account.

21.    The foregoing allegations are incorporated into each of the following counts by reference.

### Count 1 – 15 U.S.C. § 1692e

22.    The letter stated, *inter alia*: "Your current creditor has placed the above-mentioned account in this office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement."

23.    The statement in ¶ 22 is false, deceptive, and misleading.

24.    The first sentence indicates that it was the creditor's intention that the account would be "resolve[d]" with Defendant's assistance.

25.     The term "resolve" has several definitions. One reasonable meaning that a consumer might apply is provided by http://www.dictionary.com/browse/resolve. There, one of the definitions for "resolve" is "to deal with (a question, a matter of uncertainty, etc.) conclusively; settle; solve. . . ."

26.     A statement that Defendant will "deal with . . . a matter . . . conclusively" is an implication that Defendant will resort to whatever legal means are available to it to compel payment on the debt.

27.     This inference is reinforced by the next sentence in the letter, which threatens "enforcement of your current creditor's rights on your contractual agreement."

28.     The least sophisticated consumer would interpret these sentences as a statement that if the consumer failed to act, then he would be sued while the Account was in Defendant's office.

29.     However, Defendant is not a law firm.

30.     Defendant had no authority to initiate suit against Plaintiff.

31.     Plaintiff has not been sued on the Account.

32.     Defendant violated the Act, 15 U.S.C. § 1692e and e(10).

## Count 2 – 15 U.S.C. § 1692g

33.    The letter was the first communication from Defendant to Plaintiff, and Defendant did not send any further written communication to Plaintiff within 6 days of the date that Defendant mailed the letter. The allegations in this paragraph are reasonably likely to have evidentiary support after an opportunity for discovery.

34.    15 U.S.C. § 1692g generally requires a debt collector to provide a written notice within 5 days of the initial communication with a consumer in connection with the collection of a debt. That notice is required to contain certain disclosures regarding the consumer's rights, and is often referred to as a "validation notice."

35.    The validation notice must be provided in an effective manner, and cannot be overshadowed.

36.    Here, the validation notice was hidden on the back side of the letter, where a consumer would be less likely to see it, and therefore, less likely to exercise his rights.

37.    The front of the letter did direct the consumer to "see the reverse side or next page for important consumer notices." However, for two reasons this instructive was ineffective to help the consumer find the validation notice.

38.    First, the instruction was buried at the bottom of the letter with the Defendant's contact information and hours of operation – in other words, the instruction was hidden with other boilerplate text that a consumer would be unlikely to read.

39.    However, even if the consumer did manage to find the buried instruction, the language would still be insufficient to direct the consumer to the validation notice on the reverse side of the page.

40.    The instruction says to "see the reverse side **or** next page. . . ." (emphasis added).

41.    The use of the disjunctive "or" indicates that the disclosures would be in one location – either on the reverse side of the first page, **or**, on a second page.

42.    This letter was two pages. The second page of the letter contained a header in all capital letters and bold font that said "**PRIVACY NOTICE.**"

43.    That header was then followed by one-half of a page of various disclosures. The validation notice was not one of the disclosures on that page.

44.    An unsophisticated consumer, who was told that "notices" would be in one of two locations, and who saw that one of those locations

had a title that included the word "notice," would be unlikely to look any further for additional notices.

45.    The validation notice that was on the back of the letter did not contain any header indicating that it was the "notice" that was referred to on the front of the letter.

46.    Additionally, the validation notice was merely five lines of text, and was the only language that appeared on the back side of the first page.

47.    The first page of the letter contained ample space in which the five lines of text could have been placed.

48.    Frontline purposefully hid the validation notice on the back of the page with the intent and effect to hide from consumers such as the Plaintiff the required disclosure of the rights that the consumer has under the law. The allegations in this paragraph are reasonably likely to have evidentiary support after an opportunity for discovery.

49.    Defendant violated the Act, 15 U.S.C. § 1692g.

### V. Class Action Allegations

50.    This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

51.    The size of the proposed class is believed to be so numerous that

joinder of all members is impracticable. Though only Frontline knows the exact number of class members, it is believed that Frontline directs an extremely large operation. The complaint here concerns mass-produced form collection letters.

52.    The proposed class is defined as all persons:

    a.  with addresses in Lackawanna, Luzerne, or Wayne counties;

    b.  to whom, on or after August 17, 2017, Defendant caused to be sent a letter;

    c.  which letter was an effort to collect an obligation or alleged obligation to pay money;

    d.  which letter was the initial letter from Defendant in an effort to collect such obligation; and

        1.  which letter instructed the consumer to "Please see the reverse side or next page for important consumer notices" and where the second page of the letter had a heading of "**PRIVACY NOTICE**"; or

        2.  which letter stated "Your current creditor has placed the above-mentioned account in our office to resolve."

53.    There are questions of law and fact common to the Class. The principal issue is whether Frontline's communications with the Plaintiff,

such as the above-stated claims, violate provisions of the FDCPA.

54.    The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

55.    The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interest which creates a conflict in the maintenance of the class action. Counsel has adequate financial resources to assure that the interests of the class will not be harmed.

56.    Common questions of law and fact exist as to all members of the Class and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether the Defendant's communications with the members violated provisions of the FDCPA, specifically 15 U.S.C. §§ 1692e(10) and 1692g.

57.    The size of the class is expected to be large enough to warrant class treatment. The claims do not present any difficulties that are likely to be encountered in the management of the action as a class action.

58.    There is believed to be no other litigation already commenced against Frontline by members of the class involving the issues presented

herein.

59.     This is an appropriate forum for the litigation of the claims of the entire class. Almost all of the class members reside within a short drive of the courthouse. There is no forum that has a distinct advantage over this Court.

60.     The class members likely have little or no interest in individually controlling the prosecution of separate actions, and most are probably unaware that their rights have been violated. In view of the complexities of the issues and the expenses of litigation, the separate claims of the individual class members are not sufficient in amount to encourage individual actions. The amount of statutory damages that are recoverable by any individual plaintiff in a claim under the FDCPA are limited to $1,000.00 plus costs and attorney's fees.

61.     It is not likely that the amount which may be recovered by individual class members is so small in relation to the expense and effort of administering the action as not to justify a class action. To the contrary, the amount available to the class members is $500,000.00, but no more than 1% of the net worth of the debt collector. See 15 U.S.C. § 1692k(a)(2)(B)(II).

WHEREFORE, Plaintiff respectfully requests that:

a.      an order be entered certifying the proposed class under Fed. R.

Civ. P. 23 and appointing Plaintiff and his counsel to represent the class;

b.      judgment be entered against Frontline for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B);

c.      the Court award costs and attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d.      the Court award such other and further relief as the Court deems just and proper.

## V. Demand for Jury Trial

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully Submitted,

s/ Carlo Sabatini
Carlo Sabatini: PA 83831
Brett Freeman: PA 308834
Attorneys for Plaintiff
Sabatini Freeman, LLC
216 N. Blakely St.
Dunmore, PA  18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email ecf@bankruptcypa.com

Exhibit A

(Letter dated 08/17/2017)

# FRONTLINE
## ASSET STRATEGIES

**TO MAKE AN ONLINE PAYMENT ARRANGEMENT VISIT WWW.PAYFRONTLINE.COM**

CHARLIE STIFFLER
127 WHITE BIRCH PARK
LAKE ARIEL PA 18436-4656

014600

Frontline Asset Strategies, LLC
2700 Snelling Ave N.
Ste 250
Roseville, MN 55113

Date: 08/17/2017

| | |
|---|---|
| Current Creditor to whom the debt is owed: | Cach, LLC |
| Original Creditor: | Webbank |
| Original Creditor#: | xx███ |
| Charge-off Date: | 11/22/2016 |
| FAST #: | ████ |
| Total Amount Due: | $4,604.37 |

Dear CHARLIE STIFFLER:

Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement. Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations. This notice in no way affects any rights you may have.

As of the date of this letter, you owe $4,604.37. Go to our secure website, www.payfrontline.com, make payment in full or to see what payment options may be available to you.

If you cannot make payment in full, please call our office at 877-258-1590 to discuss alternate payment arrangements. Remember, we here at Frontline Asset Strategies are here to assist you in resolving this outstanding debt and moving forward. We strive to work with you, not against you.

Thank you for your time and attention regarding the resolution of this debt. Nothing contained in this letter changes or alters your consumer rights. Calls to or from this company, along with communications via live chat, may be monitored or recorded.

Sincerely,
Troy Tratar
877-258-1590
Frontline Asset Strategies, LLC

## IMPORTANT NOTICE
This communication is from a debt collector and is an attempt to collect a debt.
Any information obtained will be used for that purpose.

Please see the reverse side or next page for important consumer notices.
Frontline Asset Strategies, LLC • 2700 Snelling Ave N. • Ste 250 • Roseville, MN 55113
Toll Free: 877-258-1590 Fax: 6516212879
Hours of Operation: Monday-Friday 7AM-9PM CST • Saturday 8AM-12PM CST

**MEMBER**



ACA
INTERNATIONAL
The Association of Credit
and Collection Professionals



120422-L16-22461

Unless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office, in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

**PRIVACY NOTICE**

This Privacy Notice is being provided on behalf of each of the following related companies (collectively, the "Resurgent Companies"). It describes the general policy of the Resurgent Companies regarding the personal information of customers and former customers.

| | | |
|---|---|---|
| Resurgent Capital Services L.P. | LVNV Funding, LLC | Ashley Funding Services LLC |
| Sherman Acquisition L.L.C. | PYOD LLC | SFG REO, LLC |
| Resurgent Capital Services PR LLC | Anson Street LLC | Pinnacle Credit Services, LLC |
| CACV of Colorado, LLC | CACH, LLC | |

**Information We May Collect.** The Resurgent Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** At the Resurgent Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Sharing Collected Information with Affiliates**  From time to time, the Resurgent Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts to the extent permitted under the Fair Debt Collection Practices Act or applicable state law.

**Sharing Collected Information with Third Parties**  The Resurgent Companies do not share collected information about customers or former customers with third parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collection Practices Act and applicable state law.