# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHARLES STIFFLER aka CHARLIE STIFFLER, individually and on behalf of all others similarly situated, | : : : : | Civil Action No.: 3:18-cv-01337-RDM |
| Plaintiff | : : | |
| v. | : : | |
| FRONTLINE ASSET STRATEGIES, LLC, | : : | |
| Defendant | : : | |

---

## DEFENDANT FRONTLINE ASSET STRATEGIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

---

### GORDON & REES LLP
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
Tel: (973) 549-2500
Fax: (973) 377-1911
E-mail: psiachos@grsm.com
*Attorneys For Frontline Asset Strategies, LLC*

*Of Counsel and on the Brief:*
    Peter G. Siachos, Esq.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

      A.     Procedural History ................................................................................................ 2

      B.     Factual Allegations ............................................................................................... 3

STANDARD OF REVIEW ..................................................................................................... 4

ARGUMENT ......................................................................................................................... 6

      A.     Frontline's Dunning Letter Complies With Section 1692e Of The FDCPA ........... 7

      B.     Frontline's Dunning Letter Complies With Section 1692g Of The FDCPA ......... 10

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................. 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................. 5

*Brown v. Card Serv. Ctr.,*
    464 F.3d 450 (3d Cir. 2006) ...................................................... 6

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) ...................................................... 6

*Campuzano-Burgos v. Midland Credit Mgmt.,*
    550 F.3d 294 (3d Cir. 2008) ...................................................... 7

*Daniels v. Solomon & Solomon, P.C.,*
    2017 U.S. Dist. LEXIS 136662 (E.D. Pa. Aug. 25, 2017) ........................................... 7, 8, 9

*Graziano v. Harrison,*
    950 F.2d 107 (3d Cir. 1991) .................................................... 11

*Hoover v. Midland Credit Mgmt.,*
    2012 U.S. Dist. LEXIS 46992 (E.D. Pa. Mar. 30, 2012) .............................. 11, 12

*Huertas v. Galaxy Asset Mgmt.,*
    641 F.3d 28 (3d Cir. 2011) .................................................... 7, 8

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) .................................................... 5

*In re Donald J. Trump Casino Sec. Litig.,*
    7 F.3d 357 (3d Cir. 1993) ........................................................ 5

*Jewsevskyj v. Fin. Recovery Servs.,*
    704 F. App'x 145 (3d Cir. 2017) .............................................. 11

*Santiago v. Warminster Twp.,*
    629 F.3d 121 (3d Cir. 2010) ...................................................... 5

*Spann v. Midland Credit Mgmt.,*
    No. 16-3946, 2016 U.S. Dist. LEXIS 132028 (E.D. Pa. Sep. 27, 2016) ............................. 11

*Tatis v. Allied Interstate, LLC*,
   882 F.3d 422 (3d Cir. 2018) ................................................................................ 6

*Turbe v. Gov't of Virgin Islands*,
   938 F.2d 427 (3d Cir. 1991) ................................................................................ 4

*Wilson v. Quadramed Corp.*,
   225 F.3d 350 (3d Cir. 2000) ................................................................................ 9

**Statutes**

15 U.S.C. § 1692 ........................................................................... 1, 7, 8, 10, 12, 13

**Rules**

Fed. R. Civ. P. 12 .............................................................................................. 2, 4, 6

Fed. R. Civ. P. 8 ..................................................................................................... 5

## PRELIMINARY STATEMENT

Plaintiff Charlie Stiffler ("Plaintiff") brings this putative class action against Defendant Frontline Asset Strategies, LLC ("Frontline") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692g ("FDCPA"). Plaintiff alleges that Frontline is a debt collector who sent him a dunning letter, dated August 17, 2017, that allegedly violates the FDCPA (the "Letter"). *See* Certification of Peter G. Siachos, Esq. dated September 28, 2018 ("Siachos Cert."), Complaint ("Compl."), **Exhibit A**.

At some point prior to August 17, 2017, Plaintiff incurred a debt, later fell behind on his payments, and went into default on his account. The original creditor, WebBank, LLC ("WebBank"), charged-off the Plaintiff's debt, with a principal amount of $4,604.37 ("Debt").[1] Thereafter, WebBank transferred the Debt to CACH, LLC ("CACH"), who then placed the debt with Frontline for collections. Frontline sent the Letter to Plaintiff in order to collect the Debt, and notified Plaintiff that "as of the date of the letter," Plaintiff owed $4,604.37 towards his delinquent account. Plaintiff still has not paid his Debt.

Plaintiff claims that, under the least sophisticated consumer standard, the Letter constitutes false, deceptive, or misleading statements in violation of §§ 1692e and 1692g. The crux of Plaintiff's contrived argument centers on (1) Frontline's use of the word "resolve" in the Letter and (2) the form and placement of the FDCPA's Section 1692g validation notice ("G-Notice"). Essentially, Plaintiff's first argument suggests that the term "resolve" is synonymous with the word "sue." Thus, Frontline allegedly implied that it could sue Plaintiff for the Debt, when in fact it could not. Perhaps the most glaring defect in Plaintiff's pleading, as it relates to the definition of "resolve," is that the word does not mean "initiate lawsuit." Plaintiff

---

[1] A charged-off debt means that WebBank ceased its own efforts to bring the Plaintiff's Debt current and referred to Defendants for collection.

nonetheless proves Frontline's case by providing the standard definition of resolve: "to deal with (a question, a matter of uncertainty, etc.) conclusively; settle; solve. . . ."  Of course, the term "resolve" is not an overly complicated word that would require the use of a dictionary in the first place.  Recognizing this, Third Circuit Courts repeatedly hold that the term "resolve" is not deceptive in violation of the FDCPA.

Plaintiff's second argument likewise fails to plead a cause of action.  Plaintiff argues, not that the Letter lacks the required 1692g validation notice ("validation notice" or "G-Notice"), but that the G-Notice is overshadowed because it is on the reverse side.  There is no legal authority in the Third Circuit, or any Circuit for that matter, that prohibits the placement of the G-Notice on the reverse side of a dunning letter.  Further, the debtor directs, in conspicuous, bold faced capital letters, to "see the reverse side or next page for important consumer notices."

Controlling precedent in this Circuit does not support Plaintiff's strained, abstract, and contrived interpretation that the Letter is deceptive.

Plaintiff's frivolous action is now pending before this Court after Plaintiff has refused to voluntarily dismiss his claims and refused to provide a basis for maintaining his claims, even in the face of Third Circuit authority that is inconsistent with his position.  Frontline respectfully requests that the Court grant its motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as Plaintiff has failed to state a cognizable legal claim.

## **STATEMENT OF FACTS**

### A.  **Procedural History**

Plaintiff filed his Complaint on June 1, 2018 in the Court of Common Pleas of Wayne County.  Frontline properly and timely removed the action to the Middle District of Pennsylvania on July 2, 2018.  [ECF No. 1].  On July 9, 2018, Frontline filed its Answer to Plaintiff's

Complaint.  [ECF No. 3].  Plaintiff amended his Complaint to assert his allegations on behalf of a putative class on July 27, 2018 (collectively referred to as the "Complaint"), alleging that a dunning letter that Frontline sent to Plaintiff, on or about August 17, 2017, was misleading because (1) it contained the term "resolve" and "enforcement of your current creditor's rights;" and (2) the mandatory validation notice was printed on the reverse side of the first page. [ECF No. 5].  On August 10, 2018, Frontline filed its Answer to Plaintiff's Complaint as amended.  [ECF No. 6].

  **B.**  <u>**Factual Allegations**</u>

  At some point prior to August 17, 2017, Plaintiff incurred a Debt, ultimately defaulted on his Debt, and had his Debt charged-off by the original creditor WebBank.  *See* Compl. ¶ 16, Ex. A.  Thereafter, CACH became the owner and current creditor of the Debt and placed the Debt with Frontline for collection.  *See* Compl. ¶ 16, Ex. A.  Plaintiff does not dispute that CACH is the current creditor of the Debt, the validity of the Debt, nor does he allege that he does not owe the Debt.  *See generally*, Compl.  In order to collect the debt, Frontline sent a dunning letter to Plaintiff on or about August 17, 2017 (the "Letter").  *Id.* at ¶¶ 18-20.

  The Letter is a total of two pages long.  *See id.* Ex. A.  The typeface used in the Letter is in 12-point font size throughout, without variation, with exception to the phrase "**IMPORTANT NOTICE**," which is printed in a slightly larger font size.  *Id.*  The first page of the Letter identifies the current and original creditors and contains certain itemized account details, including the total amount due on the account.  *See id.*  In the body of the Letter, Frontline sets forth the general prohibitions and limitations under the FDCPA.  *See id.*  The Letter then accurately states the Plaintiff's outstanding balance and the methods in which Plaintiffs can

make payment. *Id.* Most significantly, the first two sentences in the body-paragraph of the Letter states the following:

> Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement.

*Id.* The definition of "resolve" is "to deal with (a question, a matter of uncertainty, etc.) conclusively; settle; solve. . . ." Compl., ¶ 25.

These paragraphs take up almost the entire center-portion of the first page. *See id.* In the remaining space on the bottom of the first page, the Letter contains the phrase "**IMPORTANT NOTICE**," which is the **only** language set forth in both bold and capitalized typeface. *Id.* Directly below this phrase, Frontline sets forth the mini-Miranda warning, notifying the debtor that the "communication is from a debt collector and is an attempt to collect a debt." *See id.* Then, below a one-inch line-break, the Letter directs Plaintiff to "[p]lease see the reverse side or next page for important consumer notices." *See id.* "[T]he only language that appeared on the back side of the first page," so as to ensure the G-Notice was not overshadowed by other text, was the validation notice. *See* Compl. at ¶ 46.

For the reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety as it fails to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

The standard of review applicable to a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same standard of review applied to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). To determine the sufficiency of the allegations of a complaint, courts are required to take three steps.

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'   Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of the truth.'   Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although generally required to consider all well-pled facts in the light most favorable to the complainant, a court must disregard all legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statement . . . ." *Ashcroft*, 556 U.S. at 678 (internal citation omitted).   Pleadings that offer only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Rather, to survive a motion for judgment on the pleadings, a complaint must contain "[f]actual allegations [that] raise a right to relief above the speculative level." *Id.*; *see also* Fed. R. Civ. P. 8(a)(2).   This requires the plaintiff to state facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Id.* at 570.   Mere, "naked assertion[s] . . . without some further factual enhancement stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 555 (internal citation omitted).

Furthermore, when deciding such a motion, generally, a court "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).   "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.*; *see also: In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993) ("a court may consider an undisputedly authentic

document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (internal citation omitted).  Thus, when deciding a 12(c) motion, the Court may also consider the complaint and all documents submitted therewith, as well as "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Here, taking the allegations of Plaintiff's Complaint as true Plaintiff fails to state a claim upon which relief may be granted.

## ARGUMENT

Plaintiff's allegations fail to state a claim and should accordingly be dismissed.  Third Circuit precedent establishes that the language used in the Letter is not deceptive under the FDCPA.  Further, there is no Third Circuit authority prohibiting a debt collector from placing the G-Notice on the reverse-side of a dunning letter.  As such, Plaintiff's conclusory allegations that the Letter is deceptive to the least sophisticated consumer fail to sufficiently state a claim.

When analyzing whether collection notices violate the FDCPA, Third Circuit Courts are guided by two principles of statutory construction:  (1) that the FDCPA is construed liberally in order to eliminate abusive practices by debt collectors and (2) that collection notices are analyzed as if perceived by the "least sophisticated consumer."  *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006); *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018).  "[W]hile the least sophisticated debtor standard protects naive consumers, '***it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.***'"  *Brown*, 464 F.3d at 454 (emphasis added); *see also Tatis*, 882 F.3d at 430;

### A.      Frontline's Dunning Letter Complies With Section 1692e Of The FDCPA

Frontline's use of the term "resolve" in the Letter is not deceptive under the FDCPA. The FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation" to collect a debt.  15 U.S.C. § 1692e.  Specifically, a debt collector may not falsely represent threaten to take "any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), or "use any false representation or deceptive means to . . . attempt to collect any debt." 15 U.S.C. § 1692e(10).

Plaintiff's interpretation of the Letter is the precise type of idiosyncratic reading of dunning letters that Third Circuit have repeatedly refused to adopt.  Indeed, "[t]here is nothing improper about making a settlement offer" in an attempt to collect a debt.  *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008).  Specifically, the Third Circuit has made clear that the term "resolve" will not be construed under the "least sophisticated consumer" standard as either an explicit or an implicit threat to sue.  *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011); *see also Daniels v. Solomon & Solomon, P.C.*, 2017 U.S. Dist. LEXIS 136662, at *11 (E.D. Pa. Aug. 25, 2017) (holding a dunning letter stating "[y]ou should act now to resolve this problem" was not a threat to sue).

In fact, the dunning letter in *Huertas* contained the phrase "resolve this issue."  *See id.* at 33.  However, in *Huertas*, the debt was time-barred and the current creditor, Galaxy, had no right to sue.  *Id.*  Nonetheless, the *Huertas* Court granted the defendants' motion to dismiss for failing to state a claim and because "[e]ven the least sophisticated consumer would not understand [the debt collector's] letter to explicitly or implicitly threaten litigation.  *Id.*  Likewise, the *Daniels* Court held that the phrase "resolve this problem" was not a threat to sue because the bottom of the dunning letter clearly stated that "[t]his is an attempt to collect a debt" and "[a]ny

information obtained will be used for that purpose." *Daniels*, 2017 U.S. Dist. LEXIS 136662, at *11-12.

Plaintiff fails to state a claim under Section 1692e for three reasoFirst, Plaintiff makes it abundantly clear that the term "resolve" does not have the same meaning as the term "litigate" or "sue." In fact, Plaintiff insinuates the opposite when he provides the term's definition: "to deal with (a question, a matter of uncertainty, etc.) conclusively; settle; solve. . . ." Much like the *Huertas* Court held, "resolve" cannot be construed, even by the least sophisticated consumer, as a threat that the debt collector will sue the debtor. Most noticeably, Plaintiff does not define the term "resolve" as "to sue," to "initiate or file a lawsuit," nor does his definition contain any legalese whatsoever. Simply stated, use of the word resolve does not violate the FDCPA.

Plaintiff's conclusory allegation that "the least sophisticated consumer would interpret these sentences as a statement that if the consumer failed to act, then he would be sued," requires the debtor to make quite a far-reaching, implausible assumption. The Third Circuit has preserved a quotient of reasonableness that does not stretch as far as Plaintiff's idiosyncratic interpretation of the Letter. Without an explicit threat to "sue," the least sophisticated consumer simply does not confuse the term "resolve" as a threat to sue. *See Huertas*, 641 F.3d at 33. However, even if this Court decides, against well-established precedent, that such an assumption can be made from the first sentence alone, the subsequent sentence and mini-Miranda alleviate any alleged confusion.

Second, the phrase "enforce your creditor's rights" is not a threat to sue under Third Circuit precedent. *See Daniels*, 2017 U.S. Dist. LEXIS 136662, at *12 ("the language in [the debt collector's] letter, 'avoid further action,' d[id] ***not convey a sense of urgency or a threat of specific action*** which overshadow[ed] the validation notice." (emphasis added)) (citing *Wilson v.*

-8-

*Quadramed Corp.*, 225 F.3d 350, 360 n.6 (3d Cir. 2000)).   The second sentence in the Letter states that the current creditor, CACH, might enforce its rights if Plaintiff took no action. Plaintiff suggests that this is an implicit threat to sue when taken in conjunction with the term resolve.   However, the Third Circuit has established that a directive to a debtor to "pay this bill immediately and ***avoid further action against you***" was not a threat to take legal action.  *Id.*  Of course, the phrase here is far less egregious than use of the word "action," which the *Wilson* Court admitted was a close question, but nonetheless found that it did not violate the FDCPA.

Moreover, there is no deceit to the second sentence at bar.  In *Huertas*, the debt was time-barred, and thus, a lawsuit quite literally could not be brought against the debtor.  However, here, Plaintiff does not allege the Debt is time-barred.  Thus, the undisputed current creditor of the Debt, CACH, could theoretically sue to collect a judgment.  If anything, the phrase "enforcement of ***your creditor's*** rights" clarifies any alleged confusion and informs the consumer that the current creditor, in this case CACH, would be the entity lawfully suing.  Accordingly, the Letter is not deceptive.

Finally, the Letter conspicuously includes the mini-Miranda warning, ***notifying Plaintiff that Frontline is a debt collector, not a law firm***, and that the Letter is "an attempt to collect a debt."  Inclusion of this very language compelled the *Huertas* and *Daniels* Courts to grant their respective motions to dismiss.  The mini-Miranda alleviated any implication that the letters were a threat to sue by making clear that rather, they were attempts to collect debt made by debt collectors.  *See Daniels*, 2017 U.S. Dist. LEXIS 136662, at *12-13; *Huertas*, 641 F.3d at 33. Here, the mini-Miranda notice was printed at the bottom of the Letter, directly below the emphasized phrase "**IMPORTANT NOTICE.**"  If the Letter implied a threat to sue in any way, which Frontline maintains it did not, the mini-Miranda provided immediate clarification that the

communication was merely "an attempt to collect a debt." Clearly, this notice informs the debtor that (1) Frontline is not a law firm and (2) the Letter is not a summons or a threat to sue.

Rather, Frontline's objective in sending the Letter was to collect the Debt and perhaps settle for an amount lower than its outstanding balance. There are only so many different ways to convey this objective to the debtor. If this Court adheres to Plaintiff's proposition that the terms "resolve" and "enforce . . . rights" violate the FDCPA, dunning letters are sure to lose all effectiveness. Accordingly, this Court should dismiss Count I of Plaintiff's Complaint.

**B.      Frontline's Dunning Letter Complies With Section 1692g Of The FDCPA**

Plaintiff also fails to state a claim for relief for alleged violation of Section 1692g of the FDCPA. Section 1692g of the FDCPA provides that a debt collector must furnish, in the initial communication with a debtor or within five days thereafter, information concerning the debtor's rights.[2] *See* 15 U.S.C. § 1692g. A debt collector must not overshadow or contradict a validation notice with accompanying messages. *See Jewsevskyj v. Fin. Recovery Servs.*, 704 F. App'x 145,

---

[2] The disclosure must state:

      (1)     the amount of the debt;

      (2)     the name of the creditor to whom the debt is owed;

      (3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

      (4)     a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

      (5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

148 (3d Cir. 2017).   A communication overshadows the validation notice when (1) other language and/or physical characteristics of the letter feature more prominently than does the notice" or (2) "it provides information inconsistent with the consumer's right to dispute the debt." *Id.* Further, a debtor's ability to review the validation notice "must not be a struggle: instead, it 'must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed' by the least sophisticated debtor." *Id.* (citing *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991)).   Such an inquiry is a question of law to be determined by the court.   *Id.*

The FDCPA **does not** require the validation notice be printed on the front side of a dunning letter.   *Compare Graziano*, 950 F.2d at 111 (holding that a dunning letter violated the FDCPA because language on the front of the dunning letter contradicted the validation notice printed on the reverse side), *with Spann v. Midland Credit Mgmt.*, No. 16-3946, 2016 U.S. Dist. LEXIS 132028, at *9 (E.D. Pa. Sep. 27, 2016) (holding a notice was not overshadowed because a debtor "would undoubtedly see the capitalized and bolded direction to see the reverse side for important disclosure information."); *and Hoover v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 46992, at *21 (E.D. Pa. Mar. 30, 2012) (holding that the validation notice printed on the reverse side, without being contradicted elsewhere in the letter, does not violate the FDCPA).

In *Hoover*, the dunning letter contained the capitalized phrase "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION" approximately three-quarters of the way down the page.   *See Hoover*, 2012 U.S. Dist. LEXIS 46992, at *12.   Similarly, here, the Letter contained the phrase "**IMPORTANT NOTICE**" in bold, capitalized typeface approximately three-quarters of the way down the page.   Below this phrase contained the statement, "please see the reverse side or next page for important consumer notices."   In *Hoover*, the **only** language on the reverse side of the dunning letter was the mini-Miranda warning that the letter was an attempt to collect

a debt.  *Id.* at *13-14.   Here, the validation notice required by Section 1692g was "the only

language that appeared on the back side of the first page."  Compl., ¶ 46.

The *Hoover* Court addressed this precise letter form in holding it did not violate the

FDCPA:

> The least sophisticated debtor would read [the debt collector's]
> Settlement Letter to [the debtor] 'in [its] entirety.'  In doing so, the
> least sophisticated debtor would arrive at the capitalized instruction
> to  "PLEASE  SEE  REVERSE  SIDE  FOR  IMPORTANT
> INFORMATION".
>
> Upon arriving at that instruction, the least sophisticated debtor
> would, in exercising a 'modicum of reasonableness' and 'basic
> level of understanding', turn the Settlement Letter over to examine
> the 'IMPORTANT INFORMATION' appearing on the reverse
> side.
>
> Finally, upon turning to the reverse side of the Settlement Letter,
> the least sophisticated consumer could not have missed the <u>only</u>
> text  that  appears  there:  "IMPORTANT  DISCLOSURE
> INFORMATION"  "This is a communication from a debt collector.
> This is an attempt to collect a debt. Any information obtained will
> be used for that purpose."

*Id.* at *21.

Here, Frontline does not violate the FDCPA because the Letter it sent to Plaintiff

adequately directed him to the reverse side validation notices.  Plaintiff does not allege that other

language in the letter contradicts the validation notice in the Letter.  Rather, Plaintiff points

solely to the *form* of the letter.   The "**IMPORTANT NOTICE**" language is the **<u>only</u>**

emphasized language on the entire front page of the Letter.  *See* Compl. Ex. A.  Such emphasis

ensures that the least sophisticated consumer's eyes be trained to that portion of the letter.

Further, only three complete sentences are located below the emphasized language, one of which

unequivocally directs Plaintiff to "see the reverse side."   Much like in *Hoover* and *Spann*,

Plaintiff does not allege that the validation notices as written were deficient.  However, Plaintiff

seemingly point to the use of the disjunctive "or" to conclude that the least sophisticated consumer were read page two and determine that it was unnecessary to read the reverse side of the first page.

Plaintiff's contrived reading of the FDCPA confuses the standard. As Third Circuit precedent establishes, even the least sophisticated consumer would not read dunning letter in such a careless or idiosyncratic way that he or she would be easily misled into disregarding his or her validation rights. Of course, as the *Hoover* Court insinuated, a debtor would surely read the letter, and upon reading the directive at the bottom of the page, would then flip to the reverse side of the first page before reading the second page, which is the logical order in which a consumer reads. To impose liability due to the use of a disjunctive "or" contained on a form letter, which often varies in length from consumer-to-consumer is again, the idiosyncratic reading that the FDCPA does not protect against.

Hence, Frontline unequivocally operated within the bounds of what is permitted by law and in no way violated the FDCPA. Accordingly, Plaintiff has failed to plead a plausible claim that the Letter violates the FDCPA.

## **CONCLUSION**

Based on the foregoing, Frontline respectfully request that the Court dismiss this action and award Frontline costs and fees of suit. Plaintiff utterly fails to allege that the Letter contains false, deceptive, or misleading statements in violation of §§ 1692e and 1692g.

Dated: October 1, 2018

**GORDON & REES LLP**
*Attorneys for Defendant Frontline Asset*
*Strategies, LLC*

By: _____
           Peter G. Siachos

18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
Tel: 973.549.2500
Fax: 973.377.1911