## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES STIFFLER, individually and on behalf of all others similarly situated, Plaintiff, v. | Docket No. 3:18-cv-1337-JFS (M.J. JOSEPH F. SAPORITO) |
| FRONTLINE ASSET STRATEGIES, LLC, Defendant. | ELECTRONICALLY FILED |

## PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff filed a lawsuit in state court alleging that Defendant violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), when it mailed a collection letter to him. Specifically, the collection letter was false and misleading because it falsely threatened Plaintiff with a lawsuit. The letter also violated the FDCPA because it did not adequately convey the required validation notice.

Defendant removed the case to this Court, and Plaintiff filed an amended complaint seeking to proceed on a class-wide basis. Defendant filed an answer to the amended complaint. Defendant has since filed a

motion for judgment on the pleadings. Plaintiff now files this brief in opposition.

Q<small>UESTIONS</small> P<small>RESENTED</small>

1. Whether the collection letter sent by Defendant was false and deceptive.

**SUGGESTED ANSWER:** Yes, the collection letter stated that if Plaintiff did not respond to the letter, the creditor would seek to enforce its rights under the contract. The least sophisticated debtor—and probably even a debtor with *any* level of sophistication—would read this language as a threat to initiate a lawsuit. Nevertheless, Plaintiff was never sued on the debt.

2. Whether the collection letter adequately conveyed the required validation notice.

**SUGGESTED ANSWER:** No, the letter buries the validation notice on the back of its first page. Although the first page of the letter informs the consumer that important notices may be found on "the reverse side or next page . . . .", this statement is written in the disjunctive. And, the second page of the letter contains a "privacy notice" partially set forth in bold text. The least sophisticated debtor,

after being told that an important notice would be found in one of two places, one of which contains a section titled "privacy notice," would be unlikely to look for further notices. Additionally, there was ample space for the validation notice to have been printed on the front of the letter. Thus, the form of the letter caused this required notice to be overshadowed.

<u>ARGUMENT</u>

*1. The collection letter is misleading and deceptive.*

It is undisputed that the collection letter states: "Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement." (Doc. 5 p. 14.) Defendant argues that, even under the least sophisticated debtor standard, this statement does not violate the FDCPA. Instead, Defendant argues that the proposed reading of the statement proffered by Plaintiff is a "bizarre and idiosyncratic" interpretation. Simply put, Defendant's argument is wrong.

As alleged in the complaint, one definition for the word "resolve" is "to deal with (a question, a matter of uncertainty, etc.) conclusively;

settle; solve[.]" Resolve, http://www.dictionary.com/browse/resolve, *last visited* November 8, 2018. Thus, one reasonable reading of the word "resolve" is to reach a settlement. And, the Third Circuit has already held that offering to settle a debt could refer to "the creditor's ability to enforce a debt in court rather than a mere invitation to settle the account." *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 429 (3d Cir. 2018).

If the letter had merely offered to "resolve" the account, it probably would not have violated the FDCPA.[1] However, the next sentence clearly does violate the Act. Defendant said: "Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement." There is no reasonable way for this sentence to be read in any manner *other* than as a threat to file a lawsuit. First, the conditional trigger for this sentence is that the Plaintiff does not communicate with Defendant. Thus, the

---

[1] *See, e.g., Daniels v. Solomon & Solomon P.C.*, --- Fed. Appx. ---, 2018 WL 4354403 (3d Cir. Sept. 12, 2018). Of course, as an unpublished decision, *Daniels* is not binding. However, Plaintiff is not asserting that the word "resolve" on its own is a violation. In fact, as discussed below, the second sentence of the collection letter itself is enough to violate the statute. Thus, the Court need not even address whether "resolve" contributes to the FDCPA violation.

"enforcement" of the creditor's rights cannot simply be accepting payments, since the sentence already presumes that Plaintiff does *not* communicate in *any* way, let alone by making a payment. Instead, the traditional way a creditor enforces its contractual rights is by filing a lawsuit. And, when this sentence is combined with an offer to "resolve" the account, the inference is even clearer.

Plaintiff expects that Defendant will attempt to advance an alternative way that a creditor can enforce its contractual rights. Such an argument would also fail. The Third Circuit has explicitly held that "it is not [the Court's] responsibility to decide whether the debtor or the debt collector offers 'a more appropriate reading' of a debt collection letter. [A Court] instead must interpret the document from the perspective of [sic] 'least sophisticated debtor.'" *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 151 (3d Cir. 2013). However, such an interpretation does not require the Court to predict how a consumer would be most likely to read the letter. Instead, the Court must simply determine whether the letter *can* be interpreted by a consumer in a manner that is misleading or deceptive. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006)("A debt collection

letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'").

Thus, even assuming that Defendant is able to advance a plausible alternative interpretation of its letter's second sentence—something which Defendant did *not* do in its initial brief—Plaintiff would still be entitled to prevail because under the least sophisticated debtor standard his proposed reading is reasonable. As a result, under the applicable standard, the first two sentences of the collection letter violate the FDCPA because they falsely threaten to file a lawsuit.

Defendant also states that the letter "***notif[ies] Plaintiff that Frontline is a debt collector, not a law firm . . . .***" (Doc. 15-3 p. 13 (emphasis in original).) However, this statement is completely inaccurate. Plaintiff agrees that the letter states that "[t]his communication is from a debt collector and is an attempt to collect a debt." (Doc. 5 p. 14.) However, that statement in *no* way notifies Plaintiff that Frontline is not a law firm. Rather, it merely informs Plaintiff that Defendant is a debt collector. And, the Supreme Court has already held that the FDCPA applies to debt collection law firms. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573

(2010). Thus, the disclosure that Defendant refers to is used equally by lawyer and non-lawyer debt collectors. Therefore it cannot create an inference that a debt collector using the disclosure is not a law firm.

However, even if Defendant *had* informed Plaintiff that Defendant itself could not file a lawsuit, that would still not shield it from liability. Rather, the Third Circuit has already addressed an analogous situation in *Brown*, 464 F.3d 450. There, the consumer alleged that a statement was a threat to sue where the debt collector said it may forward the account to an attorney to continue with collection efforts. The district court dismissed the consumer's claim. However, the Third Circuit reversed. In doing so, it held that "[i]f Brown can prove, after discovery that [defendant] seldom litigated or referred debts such as Brown's and those of the putative class members to an attorney, a jury could conclude that the [letter] was deceptive or misleading vis-à-vis the least sophisticated debtor." *Id.* at 455. Thus, it does not matter that the debt collector sending the collection letter would not itself initiate the lawsuit. Rather, if a debt collector knows that it's seldom true that a debt is the subject of litigation or the referral to attorneys for further review, the collection letter can be misleading and deceptive. As a

7

result, Defendant should find no solace in its "disclaimer" that it was a debt collector.

*Brown* also disposes of another argument advanced by Defendant—specifically, that the current creditor "could theoretically sue to collect a judgment." (Doc. 15-3 p. 13.) The debt collector in *Brown* likewise argued that because a lawsuit "could" be filed, it was merely stating options that it could take. And, "[t]he District Court found the [letter] in compliance with the FDCPA because it merely stated what [defendant] *could* do, if it so chose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)(emphasis in original). However, as stated above, the Third Circuit reversed and held that "it would be deceptive under the FDCPA for [defendant] to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before." *Id.* (emphasis in original). Thus, Defendant's claim that a collection lawsuit could theoretically be initiated also does not shield it from liability.

The Third Circuit cases Defendant relies upon also do not help it. In *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011), the court held that a debt collector does not violate the FDCPA simply by

attempting to collect a debt that is time-barred. But, the court noted that collection letters threatening litigation for time-barred debts can violate the FDCPA. However, in that case, the court did not find that the collection letter actually threatened litigation, so it affirmed the district court's dismissal. Here, *Huertas* is distinguishable because the collection letter states that "Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement." As discussed above, this statement is clearly a threat to file a lawsuit. As a result, *Huertas* is not relevant here.

Defendant also briefly discusses *Wilson v. Quadramed Corp.*, 225 F.3d 350 (3d Cir. 2000), *as amended* (Sept. 7, 2000). There, the debtor asserted that the notice required by 15 U.S.C. § 1692g was overshadowed by the language: "Our client has placed your account with us for immediate collection. We shall afford you the opportunity to pay this bill immediately and avoid further action against you." Although the Court noted that this was a close question, it held that this language did not overshadow the required validation notice. Here, Plaintiff is not alleging Defendant's threat to enforce the creditor's rights overshadowed the required notice. Instead, he is asserting that

the collection letter contained a false threat to sue. Thus, *Wilson* is not relevant.[2]

Ultimately, Defendant cannot escape the conclusion that a statement that its client will enforce its contractual rights is a threat that a lawsuit will be filed. As no such lawsuit was ever filed (Doc. 5. ¶ 31), this statement violates the FDCPA.

2. *The collection letter overshadows the notice required by 15 U.S.C. § 1692g.*

Defendant next discusses Plaintiff's claim that the collection letter overshadowed the notice required by 15 U.S.C. § 1692g ("the validation notice"). The required validation notice in a collection letter can be rendered ineffective by overshadowing even if the language of the letter does not explicitly contradict the notice. *See Sharpe v. Midland Credit Mgmt.*, 269 F. Supp. 3d 648, 655 (E.D. Pa. 2017)(holding that a collection letter overshadowed the validation notice even though the

---

[2] Defendant also claims that the language at issue in *Wilson* is more egregious than the language contained in the collection letter here. Plaintiff wholeheartedly disagrees. The letter in *Wilson* was clearly only referring to further collection activities. Here, on the other hand, the enforcement of a creditor's contractual rights most naturally refers to the filing of a lawsuit. Thus, Plaintiff disagrees with Defendant's opinion that *Wilson* involved more egregious language.

text of the letter was not inconsistent with the validation notice).

However, Plaintiff clearly and carefully explained the basis for his

overshadowing claim in paragraphs 33-49 of the amended complaint,

but Defendant did not address this theory.

First, the collection letter indicated that important notices could

be found on "the reverse side **or** next page . . . ." (emphasis added). The

"next" page of the letter contains a half page "Privacy Notice":

---

Case 3:18-cv-01337-RDM   Document 5   Filed 07/27/18   Page 16 of 16

**PRIVACY NOTICE**

This Privacy Notice is being provided on behalf of each of the following related companies (collectively, the "Resurgent Companies"). It describes the general policy of the Resurgent Companies regarding the personal information of customers and former customers.

| | | |
|---|---|---|
| Resurgent Capital Services L.P. | LVNV Funding, LLC | Ashley Funding Services LLC |
| Sherman Acquisition L.L.C. | PYOD LLC | SFG REO, LLC |
| Resurgent Capital Services PR LLC | Anson Street LLC | Pinnacle Credit Services, LLC |
| CACV of Colorado, LLC | CACH, LLC | |

**Information We May Collect.** The Resurgent Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** At the Resurgent Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Sharing Collected Information with Affiliates** From time to time, the Resurgent Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts to the extent permitted under the Fair Debt Collection Practices Act or applicable state law.

**Sharing Collected Information with Third Parties** The Resurgent Companies do not share collected information about customers or former customers with third parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collection Practices Act and applicable state law.

---

Despite the fact that the disclosures on this page are introduced with a

heading that states "notice," these disclosures are *not* required by the

statute. Instead, the required validation notice was printed on the back of the first page of the letter and did not contain any header indicating that it was the "notice" that was mentioned on the first page. Rather, the validation notice is a completely non-descript block of text:

> Unless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office, in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

And, the least sophisticated debtor, who was told to look in one of two locations for notices, and who saw that one of those locations had a title that included the word "notice," would likely believe he had found the important notice. Finally, the first page of the letter contained ample space in which the five lines of text comprising the validation notice could have been printed. What logical reason could Defendant have for burying it on the reverse side of the letter other than to hope that it would be overshadowed?

Also, importantly, the letter does not inform the consumer that the information on the reverse side pertains to legal rights. *See Guzman v. HOVG, LL*, 2018 WL 5631096 at *6 (E.D. Pa. Oct. 31, 2018). In *Guzman*, the court addressed a similar letter, and held that "the placement of the validation notice on the back side of the letter, when accompanied only by a vague reference on the front side to 'important consumer information,' obscures any notice that the validation notice provides." *Id.*

Here, although most of this argument was spelled out in great detail in the amended complaint, Defendant ignores it.[3] Instead, Defendant cites to cases which hold that the mere placement of a validation notice on the reverse side of a letter does not constitute *per se* overshadowing. However, that factual scenario is not the basis for Plaintiff's claim. Rather, as discussed above, Plaintiff's claim is based on the combined effect of three aspects of Defendant's letter: (a) the first page of the letter indicates that important notices would be found on the "reverse side **or** next page" (emphasis added), (b) the fact that there was sufficient space for the validation notice to have been printed on the first page, yet it was relegated to the back, and (c) the "Privacy Notice" being set forth in bold and capitalized text. As a result, Defendant's letter overshadows the validation notice.

CONCLUSION

The collection letter violates the FDCPA for two reasons. First, the letter is deceptive and misleading because Defendant falsely

---

[3] Because Defendant has not addressed Plaintiff's actual legal theory, Plaintiff does not now have an opportunity to respond to any argument that Defendant may raise later. If Defendant does address Plaintiff's theory in its reply brief, Plaintiff will seek leave to file a sur-reply.

threatened to file a lawsuit against Plaintiff. Second, the letter

overshadows the validation notice. Thus, for the foregoing reasons,

Plaintiff respectfully requests that the Court deny Defendant's motion

for judgment on the pleadings.

*s/ Brett M. Freeman*
Brett M. Freeman
Bar Number PA308834
Attorney for Plaintiff
SABATINI FREEMAN, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email bfecf@sabatinilawfirm.com

## CERTIFICATE OF SERVICE

Service is being effectuated via the CM/ECF system.

*s/ Brett M. Freeman*
Brett M. Freeman
