**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES STIFFLER aka CHARLIE STIFFLER, individually and on behalf of all others similarly situated, | Civil Action No.: 3:18-cv-01337-JFS |
| Plaintiff | |
| v. | |
| FRONTLINE ASSET STRATEGIES, LLC, | |
| Defendant | |

**DEFENDANT FRONTLINE ASSET STRATEGIES, LLC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**

**GORDON & REES LLP**
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
Tel: (973) 549-2500
Fax: (973) 377-1911
email: psiachos@grsm.com
email: rscott@grsm.com
*Attorneys For Frontline Asset Strategies, LLC*

*Of Counsel and on the Brief:*
  Peter G. Siachos, Esq.
  R. Andrew Scott, Esq. (*Admitted Pro Hac Vice*)

**PRELIMINARY STATEMENT**

The entire first argument in Plaintiff Charlie Stiffler's Opposition is premised on the misstated and sweeping legal conclusion that a debt collector is precluded from "threatening a lawsuit." However, this is neither the law, nor the language of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Rather, the FDCPA prohibits a debt collector from making "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." Section 1692e then enumerates a non-exhaustive list of explicit *per se* violations, a few of which preclude a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken," and using "any false representation or deceptive means to collect or attempt to collect any debt."

Plaintiff argues that the language in an August 17, 2017 collection letter that defendant Frontline Asset Strategies, LLC ("Frontline") sent to Plaintiff ("Letter") runs afoul of Section 1692e; specifically, the following language:

> Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement.

As argued in Frontline's moving memorandum of law, such language does not offend the FDCPA in any way. The current creditor CACH, LLC ("CACH") is not only fully *entitled* to enforce its rights in regards to the Debt, even by way of initiating a lawsuit, but CACH also *intended* on enforcing its rights. This is plainly exhibited from the mere fact that it hired Frontline to collect the Debt on its behalf, and the numerous number of collection suits filed by CACH in Pennsylvania (over 250), some of which underlie lawsuits brought by Plaintiff's

Counsel.[1]  Plaintiff merely sets forth idiosyncratic, speculative arguments that add nothing to his conclusory allegations.

Additionally, Plaintiff argues that the 1692g validation notice is overshadowed because Frontline printed it on the back of the Letter.  Plaintiff cites inapposite case law in support of his contention that this fact alone, coupled with a directive to "see the reverse side or next page for important consumer notices," does not adequately inform Plaintiff of his rights.  However, Plaintiff does not dispute the validation notice's content in any way.  As such, Plaintiff assumes, contrary to what the applicable standard imposes onto the objective least sophisticated consumer, that Plaintiff carelessly read the Letter and did not read the validation on the reverse side.  Plaintiff presumes that Frontline must have intended to bury the validation notice on the reverse side in order to overshadow Plaintiff's rights because there is just enough space to squeeze it onto the front side of the Letter.  Such an argument is purely speculative and does not account for the fact that, had Frontline printed the validation notice on the front side, it would have been *less* conspicuous to Plaintiff.

Accordingly, because even affording every benefit to Plaintiff does not change the outcome, and it is beyond cavil that Frontline did not violate the FDCPA, Plaintiff cannot maintain his claim.  His Complaint must, therefore, be dismissed, with prejudice, and judgment on the pleadings should be granted in Frontline's favor.

## **LEGAL ARGUMENT**

The arguments set forth in Plaintiff's Opposition are in no way remedial to the Complaint's apparent deficiencies.  Rather, Plaintiff further underlines his failure to state a claim in his initial pleading by arguing (1) the language in Frontline's letter is deceptive because it

---

[1] All of which this Court may take judicial notice of under Fed. R. Civ. P. 12(c).

threatens a lawsuit and (2) the 1692g notice is overshadowed due to its placement on the reverse side of the Letter. However, the FDCPA does not preclude the form and content utilized in Frontline's Letter.

### A. Frontline's Letter Complies With Section 1692e Of The FDCPA

Judgment on the pleadings should be awarded in Frontline's favor as to Count I because the Language in the Letter is neither false nor deceptive. Plaintiff's Opposition sets forth inapposite case law that simply restates general standards to support his contrived arguments. In fact, and perhaps most indicative of Plaintiff's failure to state a claim, Plaintiff most heavily depends on the English dictionary to support his first argument. Plaintiff points to no applicable sub-provision in Section 1692e, but rather alleges generally that the Letter's Language is false, deceptive, and misleading.

First, Plaintiff argues that Frontline threatens to file a lawsuit by using the language:

> Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement.

*See* Compl. Ex. A (hereinafter collectively referred to as "Language"). Yet again, Plaintiff cites the dictionary's definition of "resolve," which clearly indicates that the term does not mean "to sue," and he even concedes that the term alone "probably would not have violated the FDCPA." *See* Pl. Opp. at 4. Plaintiff's focus then shifts to the second phrase, "enforcement of your current creditor's rights," as the offending phrase. Plaintiff dedicates much of his Opposition explaining how the Language can be construed as a threat to sue. But Plaintiff provides absolutely no basis as to *what makes* such a phrase misleading and deceptive.

Plaintiff confuses case law by imbuing a bright-line rule into the statute that a threat to sue is a *per se* violation of the FDCPA.[2] However, no such language exists in the FDCPA. Rather, a debt collector is prohibited from threatening "to take any action that cannot legally be taken or that is not intended to be taken" and using "any false representation or deceptive means to collect or attempt to collect any debt." *See* § 1692e(5), 1692e(10). As Plaintiff correctly cites, a letter is deceptive and violates the FDCPA when "it can be reasonably read to have two or more different meanings, **one of which is inaccurate**." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (emphasis added). Thus, a Plaintiff must set forth (1) a reasonable alternative reading (2) that is inaccurate. Even assuming *arguendo* that Plaintiff's interpretation of the Language as a threat to sue is "reasonable," which Frontline vehemently opposes, Plaintiff's conclusory argument that Frontline "*falsely* threaten[s] to file a lawsuit" does not sufficiently state a claim. *See* Pl. Opp. at 6 (emphasis added).

Most fatal, Plaintiff does not allege that the Debt is time-barred (because it is not), or that CACH had already obtained judgment (because it has not). In other words, CACH, the current creditor that the Language alludes to, can legally take the action of filing a lawsuit. It follows that Plaintiff's alternative "meaning" is not inaccurate. Stated differently, the Language in the Letter is true.

In response, Plaintiff sets forth the proposition that even if "the current creditor 'could theoretically sue to collect a judgment," Frontline is still liable under the FDCPA because CACH did not intend to enforce its rights (i.e., file a lawsuit according to Plaintiff). *See* Pl. Opp. at 8. Plaintiff cites to the *Brown* Court's holding that it is deceptive for a debt collector "to assert that

---

[2] Frontline in no way concedes that the Language can be construed as a threat to sue. Frontline respectfully refers this honorable Court to its moving papers and maintains that Plaintiff's reading of the Letter is indeed one that is "bizarre and idiosyncratic." Here, Frontline merely responds to Plaintiff's specific argument in the corresponding text.

it could take an action that it had no intention of taking and has never or very rarely taken before." 464 F.3d 450, 454. However, *Brown* is wholly distinguishable.

In Brown, a debt collector sent the plaintiff a letter containing the following language:

> You are requested to contact the Recovery Unit of the Card Service Center … to discuss your account.
>
> Refusal to cooperate could result in a ***legal suit*** being filed for collection of the account
>
> You now have ***five (5) days*** to make arrangements for payment of this account. Failure on your part to cooperate could result in our ***forwarding this account to our attorney*** with directions to continue collection efforts.

*Brown*, 464 F.3d at 451-52. Here, the Letter does not actually threaten a "legal suit" or mention "attorneys." Rather, Plaintiff makes the irrational jump that the words "resolve" and "enforcement of your creditor's rights" threaten suit. The court in *Brown* also noted that its letter's threat to sue, coupled with the short five-day deadline, was enough to coerce payment, making it more likely that the debtor would comply. Here, there are no unreasonable time constraints and no imminent deadlines.

More importantly, the *Brown* Court held that the plaintiff stated a claim because he alleged in the complaint that the debt collector "never intended to file a suit" or refer "the debt to [its] attorney." *Id.* at 455. Plaintiff makes no such allegation here. This is because it is public knowledge that CACH habitually files suit to collect debts that it owns. In other words, CACH fully intends to initiate collection suits when collection attempts have served fruitless. Frontline is well aware of this, as it has serviced accounts for CACH in the past. In the past ten years, CACH has filed over 1000 lawsuits nationwide, and over 250 in the various Pennsylvania County Courts of Common Pleas. This does not even count the hundreds of cases that were filed in small claims courts or the jurisdictional equivalent. Worse, Plaintiff's counsel himself

brought an FDCPA case in this very court alleging that CACH wrongfully filed a collection lawsuit. *See Shawn Delhagen v. The Law Office of Harrison Ross Byck, Esq., P.C., et al.*, Docket No. 3:11-cv-01500-WJN. As such, the Letter does not threaten to take an action that it cannot legally take, nor one that it did not intend to take.[3]

Second, Plaintiff argues that the least sophisticated consumer would understand that Frontline is a law firm because it does not explicitly state that it is not. This argument is wholly frivolous and nonsensical. Moreover, Plaintiff's arguments are inconsistent with one another. On the one hand, Plaintiff alleges in the Complaint that the reason the Letter is deceptive is because Frontline "threatens" suit, but "is not a law firm" and "had no authority to initiate suit against Plaintiff." Plaintiff concludes that Frontline therefore violates Section 1692e(10). On the other hand, Plaintiff contradicts his self by acknowledging that the Letter clearly asserts that Frontline itself would not file the suit:

> it does not matter that the debt collector sending the collection letter would not itself initiate the lawsuit. Rather if a debt collector knows that its seldom true that a debt is the subject of litigation or the referral to attorneys for further review, the collection letter can be misleading and deceptive.

*See* Pl. Opp. at 7. In short, Plaintiff simultaneously alleges the Language violates the FDCPA because: (1) Frontline falsely threatens it will file suit even though it is not a law firm and cannot initiate suit and (2) Frontline falsely threatens that CACH will sue the debtor even though Frontline knew that CACH did not intend to sue.

Despite these inconsistent allegations, Plaintiff seeks to support the Complaint's allegations by claiming that the statement "[t]his communication is from a debt collector" does

---

[3] In fact, if Plaintiff's counsel were to endorse such an allegation, he would be subject to sanctions pursuant to Fed. R. Civ. P. 11(b), which states that by signing a submitted document to the Court, an attorney certifies that "the factual contentions have evidentiary support or . . . will likely have evidentiary support."

not notify Plaintiff that Frontline is *not* a law firm. Of course, no Third Circuit precedent requires a debt collector to explicitly disclose that it is not a law firm. The FDCPA only prohibits the "false representation or implication that any individual is an attorney or that any communication is from an attorney." *See* § 1692e(3). The Letter contains no language that suggests it is a law firm.

Plaintiff seeks to impose an affirmative duty on debt collectors to disclose that they are not law firms. Plaintiff irrationally presumes that such non-disclosure conveys that Frontline is a law firm under the least sophisticated consumer standard. But using Plaintiff's logic, Frontline's Letter also implies that Frontline is a number of different businesses types (e.g., a law enforcement agency, accounting firm, financial investment firm, etc.) merely because it does not disclose that it is not. Plaintiff argues that Frontline "cannot create an inference" that Frontline is not a law firm. However, the only inference made is Plaintiff's, i.e., that Frontline *could* be a law firm just because it does not state that it is not. *See* Pl. Opp. at 7. In reality, the Letter plainly states that the Letter is being sent by a *debt collector*. There is nothing deceptive about such an assertion.

In sum, Plaintiff fails to state a claim under Section 1692e of the FDCPA because the Language is not in the least bit deceptive.[4]

---

[4] Plaintiff also sets forth his unavailing and somewhat confusing argument that *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) is not applicable because the Court did not find that language in a dunning letter, similar to the instant Language, "actually threatened litigation," which is precisely what Frontline urges this Court to find. Additionally, Plaintiff concludes that *Wilson v. Quadramed Corp.*, 225 F.3d 350, 360 n.6 (3d Cir. 2000) is irrelevant because that Court held that such language did not overshadow the validation notice, and did not speak on its relation to Section 1692e. However, both cases found that language in their respective letters did not amount to a threat to sue, which is why Frontline relies on them. Because Plaintiff fails to address Frontline's contentions, Frontline will rely on its moving papers' synthesis of these cases.

B.     **Frontline's Letter Complies With Section 1692g Of The FDCPA**

Judgment on the pleadings should be awarded in Frontline's favor as to Count II because the Letter sufficiently conveys the validation notice to Plaintiff. Plaintiff simply misconstrues the least sophisticated consumer standard by presuming the opposite of what Third Circuit Courts have unequivocally established: that even the least sophisticated consumer reads a dunning letter "in its entirety." *Hoover v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 46992, at *21 (E.D. Pa. Mar. 30, 2012). Plaintiff argues that the Letter's inclusion of the word "or" gives this Court free reign to stray away from this well-established standard. It does not. Plaintiff also speculates that because the validation notice could have been printed on the front page, and the "Privacy Notice" on the second page is emphasized, the validation notice is overshadowed. However, Plaintiff fails to cite authority that suggests such facts overshadow the validation notice. As such, Count II should be dismissed for its failure to state a claim.

The least sophisticated consumer is gullible and easily deceived, but is not so careless that he or she would refrain from reviewing both locations where the Letter indicates important consumer notices are located. Third Circuit Courts preserve a "quotient of reasonableness" and a "basic level of understanding and willingness to read with care" onto the least sophisticated consumer. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018). It is undisputed that the Letter directs Plaintiff to the "reverse side or next page." In the logical course of sequential reading, the least sophisticated consumer would read the reverse side *before* the second page. The least sophisticated consumer would find the full and complete validation notice on the reverse side. On the other hand, Third Circuit Courts have rejected Plaintiff's argument that, once Plaintiff has read the second page (assuming he reads out of order), he would complacently

cease from turning back to read the reverse side. Rather, the least sophisticated consumer preserves a willingness to read with care.

Plaintiff also points to the fact that sufficient space permitted placement of the validation notice on the front page. However, such speculation does not support Plaintiff's argument that the validation notice is overshadowed due to its placement on the reverse side. Of course, if Frontline were to congest the front page with the validation notice, Plaintiff might have a stronger argument that the validation notice is over shadowed. Plaintiff argues that the validation notice, three-quarters of an inch in depth, should have been printed within the one and one-quarter inch of space on the front page. However, this space is surrounded by text that is in a font similar to the validation notice. To do so would meet the definition of "buried," as the validation notice would be camouflaged by the surrounding text.

Moreover, because Frontline's "Privacy Notice" to the consumer is printed on the second page, the portion of the front-page under the **IMPORTANT NOTICE** could not be removed. As such, the validation notice's placement on the front-page would be de-emphasized, and emphasis put solely on the text printed under the privacy notice. Rather, the validation notice, as the **only** text printed on the reverse side, further emphasizes its importance. This, coupled with the fact that the front page directs Plaintiff to read the reverse side, makes it *more likely* that the least sophisticated consumer would read it. This explanation should sufficiently answer Plaintiff's rhetorical question regarding its reason for printing the validation notice on the reverse side. *See* Pl. Opp. at 13.

Plaintiff relies on *Guzman v. HOVG, LLC* to support his claim regarding the validation notice's placement. 2018 U.S. Dist. LEXIS 186200 (E.D. Pa. Oct. 31, 2018). Plaintiff first claims that the validation notice is overshadowed because the first page did not refer to the

validation notice as a notice concerning Plaintiff's "legal rights." *See id.* at *6. Of course, where Plaintiff earlier argues that simplistic terms such as "resolve" and "enforce" can be construed as a threat to sue, Plaintiff now, seemingly, would not understand that "important consumer notices" referred to his rights as a consumer.

However, Plaintiff does not holistically address the Court's reasoning. The *Guzman* Court agreed with the plaintiff "that the *content* of the validation notice itself [was] inadequate and that the *remainder of the letter encourages* an incorrect understanding of consumer rights." *Id.* at *11 (emphasis added). The first sentence in the *Guzman* letter's validation notice failed to notify the consumer that the 30-day notification must be made in writing. *Id.* at *2-3. Additionally, the letter repeatedly invited the plaintiff to call with any questions. *Id.* at *2. Accordingly, the *Guzman* letter's placement of the validation notice on the reverse side, when coupled with its failure to sufficiently convey the 1692g writing requirement, was enough to overcome the defendant's motion to dismiss.

Here, there is no dispute regarding the content of the validation notice. The validation notice clearly indicates that any dispute must be made in writing. As such, Plaintiff's sole contention is that the validation notice is overshadowed as a result of its placement on the reverse side. This alone is not enough to state a claim. Plaintiff points to the fact that the validation notice does not contain a header, but the privacy notice on the second page does. However, Plaintiff does not, and cannot, point to any language in Section 1692g to support his notion that the validation notice is deceptive because it lacks a heading. Frontline printed the validation notice verbatim into the Letter; and had the statute required a heading, Frontline would have inserted it as well. Accordingly, Count II fails to state a claim.

## **CONCLUSION**

Based on the foregoing, and those points argued in Frontline's opening papers, Frontline respectfully requests that the Court grant judgment on the pleadings in Frontline's favor, dismissing Plaintiff's Complaint with prejudice, and award such other and further relief to Frontline as the Court may deem just and proper.

Dated: November 15, 2018

**GORDON & REES LLP**
*Attorneys for Defendant*
*Frontline Asset Strategies, LLC*

By: */s/ Peter G. Siachos*
Peter G. Siachos, Esq.
R. Andrew Scott, Esq.

18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
P: (973) 549-2500
F: (973) 377-1911
Email: psiachos@grsm.com
Email: rscott@grsm.com