# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES STIFFLER a/k/a CHARLIE STIFFLER, | |
| Plaintiff, | CIVIL ACTION NO. 3:18-cv-01337 |
| v. | (SAPORITO, M.J.) |
| FRONTLINE ASSET STRATEGIES, LLC, | |
| Defendant. | |

## MEMORANDUM

This is a civil action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The plaintiff, Charles Stiffler, alleges that the defendant, Frontline Asset Strategies, LLC ("Frontline"), violated certain provisions of the FDCPA when it mailed him a debt collection letter. Stiffler seeks an award of damages plus costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k.

This action commenced on June 1, 2018, when Stiffler filed his original complaint in the Court of Common Pleas of Wayne County. The case was removed to this federal district court by Frontline on July 2, 2018. Stiffler filed his first amended complaint on July 27, 2018. Frontline filed its answer on August 10, 2018. Frontline then moved for

judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on October 1, 2018. That motion is now fully briefed and ripe for decision.

## I. LEGAL STANDARD

The defendant has answered the complaint and moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." *U.S. Fid. & Guar. Co. v. Tierney Assoc., Inc.*, 213 F. Supp. 2d 468, 469 (M.D. Pa. 2002) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)); *see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007) ("When deciding a motion for judgment on the pleadings, the court is directed to view 'the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.'") (quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991)). In deciding a Rule 12(c) motion, we may also consider "matters of

public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005); *see also Kilvitis v. Cty. of Luzerne*, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999) ("In deciding a Rule 12(c) motion, however, a court may take judicial notice of any matter of public record."). Ultimately, "[a] party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d at 469–70 (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988), and *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)).

## II. DISCUSSION

In his amended complaint, Stiffler alleges that Frontline, a debt collector for purposes of the FDCPA, mailed a letter to him on August 17, 2017. This letter was an attempt to collect a debt, as that term is defined under the FDCPA. Stiffler alleges that the letter violated two different provisions of the FDCPA.

### A. 15 U.S.C. § 1692e

Among other things, Frontline's letter stated: "Your current creditor has placed the above-mentioned account in our office to resolve. Your lack of communication may result in the enforcement of your current creditor's rights on your contractual agreement." Stiffler claims that this statement is false, deceptive, and misleading, and thus a violation of 15 U.S.C. § 1692e, which prohibits the use of "any false, deceptive, or misleading representation . . . in connection with the collection of any debt," and, more specifically, 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a customer." Stiffler contends that this statement constitutes an implicit threat of litigation, but Frontline lacked the authority or intent to sue him.

"Because the FDCPA is a remedial statute, we construe its language broadly . . . ." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citation omitted). Thus, "[w]hether a debt collector's communications threaten litigation in a manner that violates the FDCPA depends on the language of the letter, which 'should be analyzed from the

perspective of the 'least sophisticated debtor.'" *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) (per curiam) (quoting *Brown*, 464 F.3d at 453, and *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)).

> This standard is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor. Nevertheless, the least sophisticated standard safeguards bill collectors from liability for bizarre or idiosyncratic interpretations of collection notices by preserving at least a modicum of reasonableness, as well as presuming a basic level of understanding and willingness to read with care on the part of the recipient.
>
> Although established to ease the lot of the naïve, the standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety.

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) (citations and internal quotation marks omitted).

In *Huertas*, the Third Circuit considered a debt collector's letter that requested that the debtor call "to resolve this issue," but which also included a statutorily required validation notice[1] and a boldface, all-caps

---

[1] The statutory requirements are addressed in greater detail in the following section, where we consider Stiffler's challenge to the validation notice included in the letter he received from Frontline.

disclaimer at the bottom of the one-page letter: "**THIS IS AN ATTEMPT TO COLLECT A DEBT**." *Id.* at 33. Under those circumstances, the Third Circuit held that "[e]ven the least sophisticated consumer would not understand [the debt collector's] letter to explicitly or implicitly threaten litigation." *Id.*

Here, Frontline's letter to Stiffler contained a similar validation notice and a similar disclaimer: "This communication is from a debt collector and is an attempt to collect a debt." While the disclaimer was not boldfaced and all-caps like the one in *Huertas*, it immediately followed a boldfaced, all-caps header: "**IMPORTANT NOTICE**."

Perhaps even more importantly, Frontline's letter to Stiffler stated that the debt had been "placed . . . in our office to resolve," and that a failure to communicate with Frontline "*may* result in the enforcement of your current creditor's rights on your contractual agreement." But a statement that enforcement of the creditor's contractual rights *may* result from a failure to respond does not amount to an implicit or explicit threat of litigation, and it does not give rise to liability under § 1692e. *See Avila v. Riexinger & Assoc., LLC*, 644 Fed. App'x 19, 22 (2d Cir. 2016) ("[T]he letters do not threaten legal action. Rather, they simply state that

the debt collector '*may* consider additional remedies . . . .' Such equivocal statements do not give rise to liability under Section 1692e.").

> Far from threatening legal action, the statement that the creditor '*may* choose to pursue legal action[]' indicates that legal action is an option available to the creditor, who *may* indeed choose to take advantage of it. . . . [B]ecause the statement that the creditor 'may choose to pursue legal action' merely informs the consumer of an option that is indeed clearly available to the creditor to recover the debt, it is in no way false or misleading, and thus, does not run afoul of § 1692e(10). Even the least sophisticated consumer would understand such a statement to mean that because his debt has remained unpaid, a suit may be brought by the creditor to ensure collection of the money owed.

*Madonna v. Acad. Collection Serv., Inc.*, No. 3:95CV00875 (AVC), 1997 WL 530101, at *7 (D. Conn. Aug. 12, 1997) (citations omitted); *see also Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 348 (E.D.N.Y. 2009) ("[C]ourts have denied recovery where letters are merely statements of the creditor's rights, rather than pronouncements that the collection agent *can and will* institute legal action on its own initiative.") (citing *Madonna*) (emphasis added).

Accordingly, based on the pleadings and documents attached thereto, the plaintiff's claim that the defendant falsely, deceptively, or misleadingly threatened legal action when it neither intended nor was

authorized to do so, in violation of 15 U.S.C. § 1692e and § 1692e(10), shall be dismissed for failure to state a claim upon which relief can be granted.

**B. 15 U.S.C. § 1692g**

Stiffler also contends that the letter violated a provision requiring that a debt collector provide written notice of the consumer-debtor's right to dispute the validity of the debt, pursuant to 15 U.S.C. § 1692g, commonly referred to as a "validation notice."[2] Under this statute, a validation notice must contain:

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector

---

[2] The validation notice may be provided in the debt collector's initial communication to the consumer, but if not, it must be sent to the consumer within five days after the initial communication. *See* 15 U.S.C. § 1692g(a). The August 17, 2017, letter was the only communication from Frontline to Stiffler within that five-day period.

> will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(3)–(5); *see also Graziano v. Harrison*, 950 F.2d 107, 111–12 (3d Cir. 1991) (holding that "subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing").

> To comply with the terms of the [FDCPA], statutory notice must not only explicate a debtor's rights; it must do so effectively. Thus, for example, the notice must be in print sufficiently large to be read, and must be sufficiently prominent to be noticed. More importantly for present purposes, the notice must not be overshadowed or contradicted by accompanying messages from the debt collector.

*Graziano*, 950 F.2d at 111 (citation omitted).

> In other words, a collection letter will not meet the requirements of the [FDCPA] where the validation notice is printed on the back and the front of the letter does not contain any reference to the notice or, more generally, where the validation notice is overshadowed or contradicted by accompanying messages or notices from the debt collector.

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013) (internal quotation marks omitted). "Whether the language in a debt collection letter overshadows or contradicts a validation notice is a question of law." *Sharpe v. Midland Credit Mgmt.*, 269 F. Supp. 3d 648,

654 (E.D. Pa. 2017).

Here, the August 17, 2017, letter from Frontline to Stiffler included a validation notice on the reverse side of the first page, which stated:

> Unless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office, in writing, within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

The validation notice was printed in the same typeface and font size as the main body of text on the front side of the page. *Cf. Caprio*, 709 F.3d at 150. It was positioned at the top margin, without a header or title, and nothing else was printed on the remainder of the reverse side of the first page—i.e., the validation notice occupied the top inch or so of the reverse side of the first page, with whitespace occupying the rest. Although the validation notice was printed on the back side of the first page of the letter, the front side did contain an explicit reference to the validation notice's presence on the reverse side of the page. *See id.* at 148. At the bottom of the front side, separated from the main text of the letter by

approximately one inch of whitespace was the following notice:

**IMPORTANT NOTICE**

>This communication is from a debt collector and is an attempt to collect a debt.
>
>Any information obtained will be used for that purpose.
>
>Please see the reverse side or next page for important consumer notices.

This notice was followed immediately by Frontline's mailing address, telephone and fax numbers, and hours of operation, printed in the same typeface and font size, without any separation.[3]

The letter also had a second page containing a privacy notice. This privacy notice included a boldfaced, all-caps header—"**PRIVACY NOTICE**"—followed by half a page of text in the same typeface and font size as the main text on the front of the first page and the validation notice on the reverse side of the first page. The privacy notice included four subparts delineated by separate paragraphs with boldfaced,

---

[3] We note that "[t]he mere provision of a telephone number or a request that the consumer contact the debt collector . . . does not necessarily overshadow the notice that the consumer can assert certain rights only in writing. But the notice crosses the line when 'emphasis is placed on the phone number in any way.'" *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 359 (E.D.N.Y. 2013). Stiffler does not base his claims on the manner in which Frontline presented its telephone number in its August 17, 2017, letter.

underlined headings: "**<u>Information We May Collect</u>**"; "**<u>Confidentiality and Security of Collected Information</u>**"; "**<u>Sharing Collected Information with Affiliates</u>**"; and "**<u>Sharing Collected Information with Third Parties</u>**." There was apparently nothing printed on the reverse side of the second page.

For reference, the layout of the letter is depicted below:

  

    Page 1 (front)      Page 1 (reverse)      Page 2 (front)

Stiffler does not contend that the validation notice itself failed to satisfy the requirements of § 1692g(a), nor does he contend that the letter contained other statements that contradicted the validation notice. *See, e.g.*, *Caprio*, 709 F.3d at 150–54 (letter directing debtor to call a toll-free telephone number to dispute the debt contradicted validation notice disclosing that statutory right to dispute debt must be exercised in

writing); *Graziano*, 950 F.2d at 111 (collection letter threatening legal action if debt was not paid *within 10 days* contradicted validation notice disclosing statutory right to dispute debt within 30 days). Instead, he contends that the validation notice was overshadowed by the privacy notice set forth on the front of page two. He argues that the letter's instruction to "[p]lease see the reverse side *or* next page for important consumer notices" would lead the least sophisticated debtor to skip over the validation notice on the reverse of the first page and proceed directly to the privacy notice on the second page.

But, as noted above, "even the 'least sophisticated debtor' is expected to read any notice *in its entirety*." *Caprio*, 709 F.3d at 149 (emphasis added); *see also Campuzano-Burgos*, 550 F.3d at 299. Here, the least sophisticated debtor, being obliged to read the entire letter, would undoubtedly read the instructions at the bottom of the first page of the letter—beneath the boldfaced header "**IMPORTANT NOTICE**"—directing him to "see the reverse side or next page for important consumer notices" and review *both* the reverse side of the first page and the second page. *See Hawk v. EOS CCA*, Civil Action No. 13-1964, 2014 WL 948059, at *2 (E.D. Pa. Mar. 10, 2014); *Hoover v. Midland Credit*

*Mgmt., Inc.*, Civil Action No. 10-cv-06856, 2012 WL 1080117, at *7 (E.D. Pa. Mar. 30, 2012); *see also Campuzano-Burgos*, 550 F.3d at 299 ("Although established to ease the lot of the naïve, the standard does not go so far as to provide solace to the willfully blind or non-observant."). Moreover, upon turning to the reverse side of the first page, the least sophisticated debtor could not have missed the *only* text that appears there: the validation notice quoted above. *See Hoover*, 2012 WL 1080117, at *7.

Having read the validation notice on the reverse of the first page, there is no reason to believe that the least sophisticated debtor would disregard it upon reading the privacy notice that follows on the next page, which does not contradict the validation notice and—inasmuch as it addresses an entirely different subject matter and appears on a separate page altogether—does not overshadow the validation notice. While a non-observant reader might skip over the "important notice" directing his or her attention to the reverse side of the first page, the "least sophisticated debtor," *who has read the collection letter in its entirety*, would neither overlook nor misunderstand his or her validation rights, adequately and effectively conveyed by the validation notice set forth on the reverse of

the first page.

Accordingly, based on the pleadings and documents attached thereto, the plaintiff's claim that the defendant's letter failed to effectively convey written notice of the plaintiff's right to dispute the validity of the debt it sought to collect, pursuant to 15 U.S.C. § 1692g, shall be dismissed for failure to state a claim upon which relief can be granted.

## III. CONCLUSION

For the foregoing reasons, the plaintiff's claims shall be dismissed with prejudice for failure to state a claim, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

An appropriate Order follows.


Dated: July 2, 2019                    ***s/Joseph F. Saporito, Jr.***
                                       JOSEPH F. SAPORITO, JR.
                                       United States Magistrate Judge